83 C.C.P.A. (Patents)

## In re FREEMAN.

### Patent Appeals No. 5089.

Court of Customs and Patent Appeals.

March 6, 1946.

BLAND, J., dissenting.

———◆———

Glenn S. Noble, of Chicago, Ill. (Dwight B. Galt, of Washington, D.C., of counsel), for appellant.

W. W. Cochran, of Washington, D.C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims Nos. 22, 23, 24, and 25 in appellant's application for a patent for an invention relating to improvements in casings for food products, such as various types of sausages, etc.

Claims numbered 1, 3, 4, 9, 15, and 17 to 20, inclusive, in appellant's application were allowed by the Primary Examiner.

Claims 22 and 24 are sufficiently illustrative of the appealed claims. They read:

"22. A tubular casing formed of a long strip of paper, each edge of the strip being folded back upon itself with the outermost portion lying against the adjacent wall of the casing, the four thicknesses thus formed being fastened together by stitching close to the outer periphery of the casing and substantially tangential thereto when the casing is expanded, the edges extending beyond the stitching and forming a rib which is useful for removing the casing from any contents enclosed therein.

"24. A tubular casing of the character set forth, formed of a long strip of fibrous material with longitudinal margins of substantially equal width folded back against the adjacent outer surfaces, said marginal portions being superimposed to form four thicknesses, stitching through said marginal portions at a sufficient distance from the outer folded edges to provide a substantial outwardly projecting longitudinal rib which is useful to rip the casing for removing it from any contents enclosed therein, the oppositely folded edges of the margins projecting a substantial distance from the stitching at right angles to the rib, and providing reinforcement for the body of the casing along the line of stitching, and tending to make a tight seam due to the stitching lying in the reentrant angles in the margins."

Claim 1 is illustrative of the allowed claims. It reads: "1. A casing for food products, formed of a strip of parchmentized paper having its edges sewn together and having *a longitudinal internal tubular welt* which is flattened close to the inner wall of the casing for closing the joint

formed by the seam the seam and stitching projecting longitudinally on the outside of the casing to form a rib which is useful in the ripping of the casing." (Italics ours.)

The reference is: Italian patent, 261,493, November 29, 1928.

The real difference between the allowed claims and the claims here on appeal is that the allowed claims call for "a longitudinal internal tubular welt which is flattened close to the inner wall of the casing for closing the joint formed by the seam, whereas that feature is not present in the appealed claims.

It appears from appellant's application, filed August 1, 1938, that in his casing each edge of the strip of paper is "folded back upon itself with the outermost portion lying against the adjacent wall of the casing," and that the folding of the edges of the strip forms four thicknesses of paper which are stitched through marginal portions, as stated in appealed claim 24, " * * * at a sufficient distance from the outer folded edges to provide a substantial outwardly projecting longitudinal rib which is useful to rip the casing for removing it from any contents enclosed therein, the oppositely folded edges of the margins projecting a substantial distance from the stitching at right angles to the rib, and providing reinforcement for the body of the casing along the line of stitching, and tending to make a tight seam due to the stitching, lying in the reentrant angles in the margins."

Appellant states in his application that it is difficult and impractical to apply tubular casings without the inner welt, called for by the allowed claims, to the stuffing horn for filling the casing with the food product.

It appears from appellant's affidavit, dated November 14, 1939, that the casing described in his application is commercially successful; that when his casing was put on the market it was first used as a casing for "wieners"; that, although not advertised as such, the "wieners" to which the casing was applied were referred to in several magazines and newspapers as "Zipp wieners"; that many of the publications, such as the National Provisioner (a magazine devoted to the meat packing industry) and Food Industries, published illustrated articles describing appellant's casing; and that Life magazine also published an article describing appellant's new product.

There is nothing in appellant's affidavit to indicate that the casings referred to in the illustrated articles were not the casings which included the longitudinal internal tubular welt, called for by the allowed claims.

The record contains an affidavit of Glenn S. Noble, attorney for the applicant, dated January 26, 1943, in which it is stated that several of appellant's efforts to make paper casings were unsuccessful; that, in his opinion, the solution of the problem confronting appellant depended to a large extent upon the longitudinal welt, called for by the allowed claims; and that one of the novel and important features of the involved invention which contributed to the commercial success of appellant's casing was the longitudinal rib, defined by the appealed claims, which was designed to be utilized in removing the casing from its contents.

The record also contains an affidavit of one James H. Wells, president of Identification, Incorporated, which corporation was organized for the purpose of manufacturing and selling articles made in accordance with appellant's invention.

It appears from the Wells affidavit that appellant's casing could be made either with or without the longitudinal welt; that his company had sold approximately 6,922,-569 feet of casing with the welt therein, and approximately 939,006 feet of casing in which the welt was not present; that when the product was first put on the market it was used as casing for "wieners"; that the "wieners" to which appellant's casing was applied became known as "Zipp wieners"; that under that designation appellant's product received considerable publicity; that the rib along the side of appellant's casing made it easy to remove the casing from its contents; and that that "feature was undoubtedly responsible for the designation of the wieners and has also been an important element in the successful use of these casings."

In rejecting the appealed claims, the Primary Examiner stated that the reference patent disclosed a parchment casing made by "folding the edges back upon themselves and sewing longitudinally through the four thicknesses," and that at "this stage [the intermediate stage] of the process, a rib is produced which obviously may be ripped off with the fingers."

It appears from the reference patent that the edges of a sheet of paper are folded back upon themselves, one toward the inside of the casing for a distance of about "three hundredths of the entire circumference" of the casing, and the other toward the outer part "for a distance of about six hundredths of the same circumference"; that the edges so folded are stitched and the edge on the outside of the casing is "coated with impermeable glue" and folded back upon itself so as to adhere to and cover the seam "to obtain greater resistance and to stop up the holes left" by the stitching. In the intermediate stage of manufacture, the outer edge of the patentee's casing is not coated with glue and is not folded back upon itself for the purposes mentioned, and it was because of that arrangement in that stage of manufacture that the examiner held that the rib formed by stitching the two edges together could be "ripped off with the fingers," and that, therefore, the reference was sufficiently pertinent to the issues presented to warrant a holding that the appealed claims were not patentable.

In answer to the argument of counsel for appellant that the rib disclosed in the reference patent would be too small to grasp, the examiner stated that it would not amount to invention to increase the size of the rib to "facilitate 'zipping' the casing off. The difference, if any, would be one of degree," and, in answer to counsel's argument that the reference discloses one edge of the casing folded inwardly, whereas in appellant's casing both edges are folded outwardly, the examiner stated that such a difference was not a patentable one, and that if the casing with the one edge folded inwardly was not sufficiently strong it would be obvious to fold the edge outwardly as in appellant's structure.

With reference to the affidavits of appellant and Glenn S. Noble alleging commercial success, the Primary Examiner stated that it was clearly indicated in the affidavit of Noble that the solution of the problem confronting appellant involved "the incorporation of the inner welt and in such a manner as to cover the seam," and that all attempts to make a successful casing had failed "until the inner welt was developed." The examiner further stated that it was not indicated in those affidavits that "a 'zipp' casing without the inner welt was successfully placed on the market."

With reference to the Wells affidavit alleging commercial success of appellant's claimed product, the examiner stated that there was no indication in the affidavit as to when the casing without the inner welt was first successfully made; that it was not explained why it was earlier stated, as for example in appellant's application, that the *success of appellant's casing was due to the incorporation of the inner welt in such manner as to cover the seam;* and that there was no evidence of record to establish that a successful casing without the inner welt had been made at the time of the filing of appellant's application.

Although, as stated by the Primary Examiner, appellant's specification indicates that it would be "difficult and impractical" to apply a casing without the so-called "welt" to stuffing horns, the appealed claims were not rejected by the examiner for that reason. On the contrary the examiner rejected the claims on the Italian patent, not on the disclosure of the patentee's completed casing but on a disclosure in the patent of the patentee's casing at an intermediate stage of manufacture.

In its decision affirming the decision of the Primary Examiner, the Board of Appeals stated, inter alia:

"The examiner has allowed claims for a casing having a longitudinal seam and an internal welt for closing the seam joint. The present claims are broader and do not include the welt structure.

"The claims have been rejected on the Italian patent which shows a casing made by folding the edges back upon themselves and sewing longitudinally through the four thicknesses. [The board was evidently referring to the drawing in the patentee's application (which it later referred to as 'Fig. 1,' although the figures are not numbered) which discloses the patentee's casing in an intermediate stage of manufacture.]

"Taking claim 22, as an example, it calls for a casing having the edges folded back with the outermost portion lying against the adjacent wall of the casing and the four thicknesses being fastened together by stitching close to the outer periphery of the casing, the edges extending beyond the stitching and forming a rib. This seems to be precisely the structure shown in the drawings of the reference. [The board again was obviously referring to the disclosure in the patent of the casing in an

162

intermediate stage of manufacture, as the patentee's finished casing does not disclose such a structure.] Appellant argues that this claim distinguishes from the reference in reciting that each edge of the strip being folded back upon itself with the outermost portion lying against the adjacent wall of the casing is not found in the patent. However, it appears to us that each edge of the strip is shown in Fig. 1 of the reference as clearly folded back upon itself and the outermost portion of the edge lying against the adjacent wall of the casing.

"It is argued further that the edges extending beyond the stitching and forming a rib which is useful for removing the casing from any contents enclosed therein is not shown or described in the reference. It is our view that the edges extending beyond the stitching as shown in the drawing necessarily form a rib. That is the extent of the structure. What the rib may be used for is not a modification of structure but a function of the mechanism.

"Claim 23, for example, calls for the edges of the strip being folded outwardly back upon themselves and the folded portions extending a sufficient distance from the side of the casing to provide a longitudinal rib. The difference in this type of claim over the disclosure of the reference resides in that one of the edges in the reference is not folded outwardly back upon itself but is folded inwardly. It is considered that the difference does not amount to a patentable improvement."

The board did not refer in its decision to the affidavits of record alleging commercial success.

As hereinbefore noted, it appears from the reference patent that in the patentee's completed casing, the edge on the outside of the casing is "coated with impermeable glue," and folded back upon itself so as to adhere to and cover the seam or rib formed by the stitching "to obtain greater resistance and to stop up the holes left" by the stitching. (Italics ours.) It is evident, therefore, that in its intermediate stage of manufacture, that is, before the outer edge is folded back upon itself to cover the seam or rib and the holes made by the stitching, the patentee's casing was not intended to be, and could not properly be, used as a food container, and that when the patentee's casing has become a finished product the so-called "rib" formed by the stitching is completely covered. Accordingly, it

would seem to be obvious that the patentee neither discloses nor suggests a casing having *a rib which might be utilized in removing the casing from its contents,* but, on the contrary, teaches that it is necessary to cover the rib formed by the stitching in order to obtain a casing suitable as a container for food products.

In view of the fact that the structure disclosed in the reference patent does not, either in its intermediate stage of manufacture or in its finished condition, disclose or suggest the rib structure defined by the appealed claims, or its function, we are of opinion that the Board of Appeals erred in holding that the appealed claims were not patentable over the disclosure in the reference patent. See Diamond Patent Co. v. S. E. Carr Co., 9 Cir., 217 F. 400, 405; Railroad Supply Co. v. Hart Steel Co. et al., 7 Cir., 222 F. 261, 272; Deitel v. Reich-Ash Corporation and Greer, 2 Cir., 57 F.2d 708; In re Madsen, 109 F.2d 242, 27 C.C.P.A., Patents, 885.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.

BLAND, J., dissents.